UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

THOMAS J. GREEN,

        Plaintiff,        Case No. 1:10-cv-1009

v.        Honorable Paul L. Maloney

CINDI CURTIN et al.,

        Defendants.
                               /

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

Plaintiff Thomas J. Green, a prisoner incarcerated at St. Louis Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $350.00 civil action filing fee within twenty-eight (28) days of this opinion and accompanying order, and if Plaintiff fails to do so, the Court will order that his action be dismissed without prejudice. Even if the case is dismissed, Plaintiff will be responsible for payment of the $350.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA

was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998); *accord Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999);

*Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious or failed to state a claim. *See Green v. Martin et al.*, No. 2:01-cv-74490 (E.D. Mich. Feb. 22, 2002); *Green v. Monroe et al.*, No. 2:01-cv-54 (W.D. Mich. Nov. 1, 2001); *Green v. Caruso et al.*, No. 2:98-cv-223 (W.D. Mich. Jan. 13, 1999).

Moreover, Plaintiff's action does not fall under the exception to the three-strikes rule for an inmate under "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Plaintiff alleges that he was diagnosed in 1992 with sarcoidosis, a multi-system illness. His symptoms became worse in 2004, and a respiratory specialist recommended that he use oxygen 24 hours a day. From that time until he was remanded to custody of the Michigan Department of Corrections (MDOC) in 2009, Plaintiff used a portable oxygen tank. When Plaintiff arrived at the medical unit of the Egeler Reception and Guidance Center on May 8, 2009, he was given a portable oxygen tank. However, he was confined to the medical unit because portable oxygen tanks are not allowed in the general population for safety and security reasons. Plaintiff complains that he was not able to engage in outdoor exercise during the 6½ months he was at the medical facility. On November 12, 2009, Plaintiff was provided a wheelchair and oxygen tanks and transferred to Oaks Correctional Facility (ECF). At ECF, he was given an oxygen plug-in concentrator and was allowed 24-hour electric in his cell to power the concentrator. Plaintiff was told that other prisoners would push his wheelchair to cell call-outs, the dining hall, and outdoor yard. Plaintiff requested a portable oxygen tank, so that he could exercise outdoors without becoming lightheaded. Defendants Eipperle and

Crompton told Plaintiff that portable oxygen tanks were not provided due to safety and security concerns. They advised him to exercise in his cell. Plaintiff complains that he did not receive any outdoor exercise from November 2009 until July 3, 2010, the date on which he drafted the allegation in his complaint. He further alleges that the lack of exercise caused him to gain weight, which resulted in his developing diabetes. He also claims that he experiences leg cramps as a result of his lack of exercise. Plaintiff now has been transferred to the St. Louis Correctional Facility.[1]

Congress did not define "imminent danger" in the PLRA, but it is significant that Congress chose to use the word "imminent," a word that conveys the idea of immediacy. "Imminent" is "Near at hand . . . impending; on the point of happening; threatening, menacing, perilous. Something which is threatening to happen at once, something close at hand, something to happen upon the instant . . . and on the point of happening." BLACK'S LAW DICTIONARY, 514-15 (6th ed. 1991). "Imminent" is also defined as "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 1130 (1976). "Imminent danger" is "such an appearance of threatened and impending injury as would put a reasonable and prudent man to his instant defense." BLACK'S LAW DICTIONARY, 515 (6th ed. 1991).

In a recent decision, the Sixth Circuit recognized the standard adopted by other circuit courts:

> While the Sixth Circuit has not defined the term "imminent danger" for purposes of this section, other Circuits have held that to meet the requirement, the threat or prison condition "must be real and proximate" and the danger of serious physical injury must exist at the time the complaint is filed. *See, e.g., Ciarpaglini v. Saini*, 352 F.3d

---

[1] To the extent that Plaintiff intends to bring claims regarding his treatment at the St. Louis Correctional Facility, such claims are not properly presented in his complaint, as he fails to name any St. Louis official as a Defendant in the action.

> 328, 330 (7th Cir.2003); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir.2001) (en banc). Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception. *Id.* Other Circuits also have held that district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are "conclusory or ridiculous," *Ciarpaglini*, 352 F.3d at 331, or are "'clearly baseless' (i.e. are fantastic or delusional and rise to the level of 'irrational or wholly incredible).'" *Gibbs v. Cross*, 160 F.3d 962, 967 (3d Cir.1998) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

*Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008). Plaintiff alleges that his past confinements have deprived him of outdoor exercise, and he attributes that deprivation as inducing his weight gain and diabetes. Plaintiff, however, fails to address his own ability to control further weight gains by eating less or exercising in his room. He also fails to demonstrate that further injury is imminent. This is particularly true where, as here, Plaintiff's allegations pertain to events that occurred at facilities other than his current place of incarceration. *See Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999).

Moreover, Plaintiff fails to demonstrate that any potential injury is sufficiently serious. Although Congress also did not define "serious physical injury," various courts have interpreted the meaning of the phrase. In *Ibrahim v. District of Columbia*, 464 F.3d 3, 7 (D.C. Cir. 2006), the D.C. Circuit concluded that a "chronic disease that could result in serious harm or even death constitutes 'serious physical injury.'" *Id.* Similarly, in *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004), the Eleventh Circuit found that HIV and Hepatitis C, both chronic and potentially fatal diseases, met the "serious physical injury" requirement. Moreover, in *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003), the Seventh Circuit recognized that "heart palpitations, chest pains, labored breathing, choking sensations, and paralysis in . . . legs and back" resulting from a denial of medication constituted a serious physical injury. *Id.* The Eighth Circuit also has addressed the question, concluding that a spreading infection in the mouth that resulted from a lack

of proper dental treatment amounted to a serious physical injury. *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002).

It is apparent from Plaintiff's complaint and attachments that Plaintiff has been seen regularly by medical personnel and has been provided medically necessary assistance. While he may not be entirely satisfied with the medical and custody decision to deny him a portable oxygen tank, he has not gone untreated and has not been exposed to the likelihood of further "serious physical injury" as other courts have defined it.

In light of the foregoing, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $350.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but he will continue to be responsible for payment of the $350.00 filing fee.

Dated:   October 22, 2010           /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    Chief United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**