UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THOMAS J. GREEN,

        Plaintiff,                    Case No. 1:10-cv-1009

v.                                           Honorable Paul L. Maloney

CINDI CURTIN et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the St. Louis Correctional Facility, though the actions of which he complains occurred while he was housed at the Oaks Correctional Facility (ECF) and the medical unit of the Egeler Reception and Guidance Center (SMN), which is the Duane Waters Hospital (DWH). Plaintiff sues ECF Warden Cindi Curtin; ECF Doctor (unknown) Crompton; ECF Nurse Practitioner Marilyn K. Eipperle; SMN/DWH Doctor Zahirul H. Talukder; DWH Health Care Administrator Scott Morgan and an unknown DWH supervisor named as "Jhon" Doe.

Plaintiff alleges that he was diagnosed in 1992 with sarcoidosis, a multi-system illness. His symptoms became worse in 2004, and a respiratory specialist recommended that he use oxygen 24 hours a day. Plaintiff alleges that he used a portable oxygen tank from 2004 until he was transferred to DWH.[1] When Plaintiff arrived at DWH on May 8, 2009, he was given a portable oxygen tank. However, he was confined to the medical unit because portable oxygen tanks are not allowed in the general population for safety and security reasons. Plaintiff complains that he was not able to engage in outdoor exercise during the 6½ months he was at the medical facility.

After about two and one half months at DWH, Plaintiff began asking for a transfer. Defendant Talukder advised him that he had made a medical recommendation that Plaintiff be transferred to the facility's C-Unit, but Defendant Morgan and Morgan's supervisor were stopping

---

[1]Plaintiff's allegations in the instant complaint conflict with his allegations in a prior action filed in 2006, which raised an essentially identical complaint about the Marquette Branch Prison (MPB). *See Green v. Hofbauer et al.*, No. 2:06-cv-218 (W.D. Mich.). In the earlier action, Plaintiff contended that, beginning when he was transferred to MPB on June 21, 2005, he was denied his rights under the Eighth Amendment because defendants provided him with a plug-in oxygen concentrator rather than a portable oxygen tank, thereby effectively restricting him from outside exercise. *Id.* (Compl. Aug. 15, 2006). The action was dismissed for failure to prosecute. *Id.* (Order & Jud. Mar. 10, 2009).

the medical transfer. Defendant Morgan told Plaintiff that Defendants wanted to see how Plaintiff did at DWH and advised Plaintiff that there was not another prison that would accept him and allow him to use the oxygen tank.

While in DWH, Plaintiff was housed with prisoners of all security levels. Plaintiff alleges that, after he filed a grievance, unspecified medical staff gave Plaintiff cellmates who were dying prisoners, many of whom had no control over their bodily functions and had diseases such as cancer and Hepatitis C. According to Plaintiff, he "could not take it anymore and started acting out." (Compl. at 8, Page ID #8.) Because of his behavior, his security level was raised from a Level II to Level III.

On November 12, 2009, Plaintiff was provided a wheelchair and oxygen tanks and transferred to ECF, a Level IV institution. Defendant Dr. Talukder's orders at the time of transfer indicated that 24-hour access to oxygen was no longer needed. When Plaintiff arrived at ECF, his portable oxygen tank was taken away. Instead, he was given a plug-in oxygen concentrator and was allowed 24-hour electricity in his cell to power the concentrator. Plaintiff was told that other prisoners would push his wheelchair to cell call-outs, the dining hall, and outdoor yard. Plaintiff requested a portable oxygen tank, so that he could exercise outdoors without becoming lightheaded. Defendants Eipperle and Crompton told Plaintiff that portable oxygen tanks were not allowed at the facility due to safety and security concerns. They advised him to exercise in his cell. Plaintiff complains that he did not receive any outdoor exercise from November 2009 until July 3, 2010, the date on which he drafted the allegations in his complaint. He further alleges that the lack of exercise caused him to gain weight, which resulted in his developing diabetes. He also claims that he

experiences leg cramps as a result of his lack of exercise. Plaintiff now has been transferred to the St. Louis Correctional Facility.[2]

Based on these allegations, Plaintiff contends that Defendants violated his rights under the Eighth Amendment to adequate medical care and adequate outdoor exercise. He seeks injunctive relief, as well as compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

---

[2]To the extent that Plaintiff intends to bring claims regarding his treatment at the St. Louis Correctional Facility, such claims are not properly presented in his complaint, as he fails to name any St. Louis official as a Defendant in the action.

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010 (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff raises Eighth Amendment claims against Defendants at both DWH and ECF. First, Plaintiff alleges that Defendants Talukder, Morgan and the unnamed supervisor kept him at DWH for six and one-half months, where he was unable to go outside to exercise. Second, Plaintiff alleges that, after he was transferred to ECF, he was denied a portable oxygen tank, which again effectively precluded him from exercising outside.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized

measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence

in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

To the extent that Plaintiff complains about the change to his medical accommodations ordered by Defendant Talukder, he alleges no more than a disagreement with the medical judgments of prison doctors. It is apparent from Plaintiff's complaint and attachments that Plaintiff has been seen regularly by medical personnel and has been provided medically necessary assistance. At DWH, Plaintiff was provided with a portable oxygen tank, but he was not allowed to take it out of the unit. At ECF, Plaintiff was provided with an in-cell oxygen concentrator. Both medical accommodations provided Plaintiff with 24-hour access to oxygen. Although Plaintiff believes that Dr. Talukder should not have determined that Plaintiff no longer needed 24-hour access to oxygen, Plaintiff's complaint describes no more than a disagreement with the judgment of prison medical personnel. Moreover, regardless of Talukder's change in orders, Plaintiff's allegations demonstrate that he has had 24-hour access to oxygen at all times. For both reasons, Defendant Talukder's change in Plaintiff's medical orders fails to state a claim under the Eighth Amendment.

Plaintiff next alleges that being kept in a medical unit for over six months is cruel and unusual punishment because he could not leave the medical unit and therefore could not exercise outside. In addition, he alleges that his Eighth Amendment rights were violated by Defendants at ECF because he was effectively denied the opportunity to exercise outside by the refusal of Defendants to provide a portable oxygen tank. He further alleges that Defendants were deliberately indifferent to the possibility that he would develop diabetes because he was not allowed a portable oxygen tank and therefore was effectively prevented from going outside to exercise.

Plaintiff's allegations fail to allege a violation of the Eighth Amendment. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 825. The Sixth Circuit has recognized on several occasions that, absent a legitimate penological purpose, some limitations on outdoor exercise may violate the Eighth Amendment. *See Rodgers v. Jabe*, 43 F.3d 1082, 1087-88 (6th Cir. 1995) (citing *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985), and *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983)). The court, however, has declined to find that minimum yard time is constitutionally required in all circumstances. *Rodgers*, 43 F.3d at 1087-88. Instead, the court has held that when yard time is extremely limited or denied altogether, the prison may be required to provide a legitimate penological purpose for the deprivation. *Id.* (citing *Patterson*, 717 F.2d at 289). As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washingdon v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125-126 (1977). These concerns

are even stronger when a state penal institution is involved. *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998).

In this case, Plaintiff does not allege that Defendants actually prevented him from exercising. Instead, he alleges only that he had health conditions requiring oxygen and that, for safety and security reasons, oxygen was available to him only in the medical unit or in his cell because he was not allowed to possess a portable oxygen tank. Moreover, Plaintiff acknowledges that he was informed of the penological reason for the limitation, and the limitation is patently reasonable given the well-known flammable and explosive potential of oxygen tanks. Although Plaintiff undoubtedly preferred to exercise outside, he was free to exercise in his room. Defendants' denial of a portable oxygen tank does not rise to the level of cruel and unusual punishment solely because Plaintiff is unable to exercise outdoors without one.

In addition, Plaintiff's risk of developing diabetes because of a lack of outdoor exercise was not sufficiently substantial to support the objective component of the deliberate-indifference test. *See Wilson v. Terhune*, No. 1:10-cv-06538, 2008 WL 4966312, at *13 (E.D. Ca. 2008) (although defendants were aware of plaintiff's diabetes, their denial of a wheelchair that effectively prevented Plaintiff from daily outdoor exercise did not establish either prong of the deliberate indifference standard); *see also Mastoianni v. Reilly*, 602 F. Supp. 2d 425, 435-36 (E.D.N.Y. 2009) (allegations that a prison's high starch diet caused plaintiff to develop diabetes did not support a conclusion that defendants were deliberately indifferent to a substantial risk of serious harm to plaintiff). Plaintiff's likelihood of developing diabetes would not have been obvious to Defendants simply because Plaintiff could not go outside to exercise. *Wilson*, 2008 WL 4966312, at, 13. Plaintiff was not deprived of exercise; he was free to exercise in his cell. In addition, many

other factors affected the degree of Plaintiff's risk of developing diabetes, including factors within Plaintiff's control such as the amount and type of food Plaintiff chose to eat.³ The mere possibility that Plaintiff might develop diabetes and that additional opportunities for exercise might help prevent the onset of diabetes does not amount to a sufficiently substantial risk of serious harm to meet the objective component of *Farmer*, 511 U.S. at 834.

Further, Plaintiff's allegations do not support the subjective component of *Farmer*. By his own allegations, Defendants were not attempting to punish Plaintiff by depriving him of outside exercise. They were providing him with necessary medical care in a safe and secure manner, which had the incidental effect of depriving him of outside exercise. Plaintiff's allegations fail to demonstrate that Defendants had a "sufficiently culpable state of mind," *Brown*, 207 F.3d at 867, to support an Eighth Amendment claim.⁴

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

---

³Indeed, although Plaintiff allegedly has been precluded from outdoor exercise by his need for oxygen at least since 2005, s*ee Green v. Hofbauer et al.*, No. 2:06-cv-218 (W.D. Mich.) (docket #1), he currently alleges that he gained substantial weight only after he arrived at ECF in November 2009. The fact that Plaintiff avoided substantial weight gain for several years while under essentially identical restrictions, undermines any inference that the lack of outdoor exercise was the reason he developed diabetes.

⁴Because the complaint fails to state a claim, Plaintiff's pending motions for preliminary injunctive relief (docket #4) and to appoint counsel (docket #5) are denied as moot.

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:  January 20, 2011                    /s/ Paul L. Maloney
                                                                   Paul L. Maloney
                                                                   Chief United States District Judge